**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>**v.**<br><br>**BENNY DANESHJOU (3),**<br>**Defendant.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CRIMINAL NO. 1:20-CR-289-RP** |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITMAN:**

NOW COMES THE UNITED STATES, by and through Douglas W. Gardner, Assistant United States Attorney and files this Sentencing Memorandum.

## I. SENTENCING MEMORANDUM

Section 3553(a) directs the Court to "impose a sentence sufficient, *but not greater than necessary*, to comply with . . ." the statutory sentencing goals. 18 U.S.C. § 3553(a) (emphasis added); *see also Williams*, 517 F.3d at 809. The section 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, etc.;
>
> (3) the kinds of sentences available;
>
> (4) the Guidelines;
>
> (5) pertinent policy statements;
>
> (6) the need to avoid unwarranted sentencing disparities; and

(7) the need to provide restitution to any victims.

18 U.S.C. § 3553(a).

**A. Nature and Circumstances of the Offense**

This Court sat through the trial, heard all the witness testimony and is familiar with the evidence, thus it does not need reviewing in the interest of economy. However, Defendant makes the claim that he "was not an active participant in the distribution of drugs." Def. Sent. Memo. at 3. While true that Defendant did not physically deliver drugs, his involvement and desire to invest in all facets of this drug trafficking cell amount to a full partnership in the distribution activities.

Recalling the Court's attention to the testimony of TFO Ron Enriquez, he stated that on September 24, 2019, he conducted surveillance of V. Prasad and Defendant in Defendant's 2014 Maserati. TFO Enriquez stated he observed these two stopping at multiple high-rise residences in the West Campus area of Austin where Prasad would exit the car with a backpack and return shortly thereafter. TFO Enriquez testified that this activity was consistent with either drug deliveries and/or money pickups.

This testimony coupled with exhibits discussing marijuana grow operations in the states of Washington and Oklahoma and Defendant's desire to invest, the psilocybin production and renovation of a climate-controlled laboratory clean cultivation barn demonstrate an integral knowledge of the distribution activities and the need to launder funds to promote this activity to enrich himself.

**B. Age and Health**

Defendant cites to §5H1.1 claiming that age may be a consideration where a Defendant is elderly and infirm. Although elderly, Defendant has demonstrated through the prodigious number and length of filings and the conduct of his own criminal defense that he is anything but infirm.

Defendant points to §5H1.1 references the "age crime-curve" where criminal behavior tends to decrease with age and that youthful individuals generally are more impulsive, risk-

seeking and susceptible to outside influence.

Defendant's claim of "age" is a double-edged sword. Whereas youth can be a consideration for many of the other defendants in this case, such is not the case for Defendant. Defendant gravitated toward criminal activities to further the criminal enterprise, establish a money-laundering business and continue to search for and advise V. Prasad on additional properties in which to invest drug proceeds at a late stage in life. Defendant cannot claim that youthful exuberance allowed him to be easily influenced. This is especially true given his education and background.

Defendant's age did not stop him from devising and running a money laundering business. It did not stop him from attempting to shelter funds in multiple entities under the false belief that those funds did not belong to him. It did not stop him from skimming monies meant for laundering purposes to fund his lifestyle.

Defendant points to a previous submission from Dr. S. Krisham, a California cardiologist. Having never personally evaluated Defendant, Dr. Krisham opines as to Defendant's poor health. (Def. Sent. Memo @ 8). However, transcripts and documents from prior hearings show both his treating physician and medical staff at Bastrop County opined as to the manageability of his conditions if Defendant stopped being non-compliant. Since his incarceration following conviction, medical staff at both the Burnet County & Limestone County Detention Centers have delivered the same opinions. Notably, this case has been proceeding for approximately 4 ½ years and current medical care has continued to address Defendant's medical requirements.

Defendant cites to a 2022 Sentencing Commission report on Older Offenders. Def. Sent. Memo at 9. Defendant claims that 42% of offenders 70+ received probation or some sort of lesser sentence. This stat ignores that fact that on the other side of that coin, 58% or a majority were incarcerated. Given Defendant's knowing actions, he shouldn't be able to claim that he's too elderly to be incarcerated when he wasn't too elderly to commit the offense. There is nothing in Defendant's medical records indicating that Defendant is incapable of self-care or immobile.

One of the most egregious acts refuting his infirmity claim occurred after charges were

brought against him. His age did not stop him from attempting to continue the conspiracy in applying for an EIDL loan using a fake "Jack Rosey" for the 9601 Weir Loop property. Defendant made this application even after being confronted with that fact during his custodial interview in December 2021 where he lied to officers in denying any knowledge. (See GE# 211).

**C. Disparity**

Defendant's disparity claim misses the mark. The first consideration in determining disparity necessitates an evaluation regarding activities and behavior among the co-defendants to determine if there are any distinguishing features. In this instance, there are two. 1) With respect to this cell, only Prasad and Defendant functioned in managerial or leadership roles. Thus, comparison to every other codefendant amounts to a false equivalency. 2) Prasad's guideline range was found to be 360-months to life. Defendant's guideline range is 210-262 months.[1]

The ultimate sentence imposed on Prasad was the product of his cooperation regarding all individuals involved in this drug ring and specifically, testimony against Defendant. The Fifth Circuit has addressed this circumstance stating, "that sentencing disparity produced by substantial assistance departures was intended by Congress and is thus not a proper sentencing consideration under section 3553(a)(6)." *United States v. Candia*, 454 F.3d 468, 476 (5th Cir. 2006).

As is the case here, *Candia* did not show he was similarly situated to two other co-defendants who provided substantial assistance and whose sentences were reduced pursuant to Rule 35. *Id.* The Court held that, "it would have been improper for the district court to consider the co-defendants' reduced sentences in making the instant sentencing determination." Defendant did not cooperate. He went to trial thus not accepting responsibility. His advisory guideline range is comparable to Prasad's guideline range regarding their respective conduct within this organization.

Contrary to Defendant's position, sentencing Defendant anywhere near the other

---

[1] Given the facts of this case, Defendant's education and experience in architecture and real estate do provide a basis for application of U.S.S.G. Guideline §3B1.3-Use of Special Skill. Had this adjustment applied, Defendant's guideline range would be 262-327.

codefendants would in fact create the disparity he complains about.

**D. History and Characteristics of the Defendant**

Defendant has spent a lifetime of using and abusing the system to his advantage. He is combative, litigious and underhanded in all his business activities. (GE#s 138-142, 196-98, 207-09, 212-27). His credit reports and other documents seized from his papers and trash reflect a lifetime of avoiding his contractual obligations and defrauding others. (GE#s 194-95). What appears to be a consistent and persistent efforts to engage in civil fraud turned to criminal activities to satisfy his need for funds. It is that lifetime of experience trying to get the upper hand no matter the cost he applied to this money laundering and drug conspiracy. Even in this endeavor, there was no honor among thieves that he stole funds from his younger, inexperienced coconspirators and diverted them to his own use.

The delays in this proceeding amounting to six different attorneys and 15 separate continuances spanning 4 ½ years, his attempts at malingering, repeated nonsensical filings are examples of the character this Defendant presents. His actions during this conspiracy and the conduct of this criminal case reveal his true nature and are all entirely consistent with his history of avoiding consequences for his actions.

## II. CONCLUSION

*They (Lilliputians) look upon fraud as a greater Crime than Theft, and therefore seldom fail to punish it with Death; for they allege, that Care and Vigilance, with a very common Understanding, may preserve a Man's Goods from Thieves, but Honesty has no fence against superior Cunning; and since it is necessary that there should be a perpetual Intercourse of Buying and Selling, and dealing upon Credit, where Fraud is permitted and connived at, or has no Law to punish it, the honest Dealer is always undone, and the Knave gets the advantage."*

Swift, J. Gulliver's Travels, London, Penguin (1967) p. 94

Two words characterize Defendant - ***greed*** and ***grift***. The social contract we agree to in exchange for an orderly and safe community is the most fundamental source that citizens depend upon to live well. The choice is either to live by the terms of the contract, or if not, live in chaos

governed solely by self-interest.

Defendant has wholly rejected this contract. His actions and his history reflect that self-interest and self-dealing are his only touchstones. His undeserved and certainly unearned sense of entitlement drove him towards one goal: lining his own pockets regardless of others by any means including willingly joining a drug trafficking organization.

WHEREFORE PREMISES CONSIDERED, based on the circumstances of this case, Defendant's conduct and his history, the United States respectfully requests this Court sentence Defendant within the advisory guideline range.

Respectfully submitted,
JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

By: /s/ *Douglas W. Gardner*
DOUGLAS GARDNER
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

1) I hereby certify that a copy of the foregoing has been delivered via registered United States Mail on October 1, 2025, to:

Mr. BENNY DANESHJOU
*Pro Se Defendant*
USMS No. 20220-509
Limestone County Detention Center
910 Tyus Road
Groesbeck, TX 76642

2) I hereby certify that a copy of the foregoing has been delivered via email on October 1, 2025, to:

BDaneshjoulegal@gmail.com

3) I hereby certify that a copy of the foregoing has been delivered via the ECF electronic notification on October 1, 2025

4) I hereby certify that a copy of the foregoing has been delivered via registered United States Mail on October 1, 2025, to:

Mr. BENNY DANESHJOU
2300 Portofino Ridge Drive,
Austin, TX 78735

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

By: /s/ *Douglas W. Gardner*
DOUGLAS GARDNER
Assistant United States Attorney