UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>BENNY DANESHJOU (3),<br>Defendant. | §<br>§<br>§<br>§<br>§  CRIMINAL NO. 1:20-CR-289-RP<br>§<br>§<br>§<br>§ |

### GOVERNMENT'S RESPONSE TO DEFENSE OBJECTIONS AND SENTENCING MEMORANDUM

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITMAN**

NOW COMES THE UNITED STATES, by and through Douglas W. Gardner, Assistant United States Attorney and files this and response to Defendant's objections to the Pre-Sentence Investigation Report ("PSR"), with argument and authorities, pursuant to Fed. Rule Crim. Proc. Rule 32 (b)(6)(B) and Sentencing Memorandum.

### I. BACKGROUND

The PSR prepared in Defendant's case indicates that his Total Offense Level is 37 and a Criminal History of I resulting in an advisory guideline range between 210-262 months.

### II. DEFENDANT'S OBJECTIONS

Defendant lodges three objections to the Presentence Report.

### A. Role Adjustment

U.S.S.G. §3B1.1 provides an adjustment for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Defendant claims that "he did not manage or supervise anyone." The extensive facts brought forth at trial suggest otherwise. On numerous occasions, as the creator and manager of the money laundering scheme

1

within this organization, Defendant not only functioned as an equal partner with Kenny Nguyen and Varun Prasad, but at times directed both individuals to perform tasks in support of the money laundering activities. These instances included payments of drug proceeds involving real property acquisitions, renovations, false rental payments and other banking actions.

Two brief examples represent Defendant's managerial role vis-à-vis coconspirators K. Nguyen and V. Prasad:

The first involves a text exchange from Defendant to V. Prasad and K. Nguyen directing these two in how to conduct themselves in negotiations with hard money lender Arch Funding for the property at 2610 S. 3d Street, Austin, TX:

> **GE #46** -   From: 5123478900 Benny
> To:   6176946698 Varun New Cell (owner)
> To:   5125221222 Kenny (owner)
>
> Kenny
> When you meet Buck (Shapiro) be real-positive
> Especially on refinance
> Do not get in details
> Do not mention anything about Varun as he is not on rye [sic] loan and would cause problem with lender

The second involves a text from Defendant to V. Prasad and K. Nguyen directing these two in the collection and deposit of drug proceeds for payment of property taxes on the S.3d Street property:

> **GE# 46** -   From: 5123478900 Benny
> To:   6176946698 Varun New Cell (owner)
> To:   5125221222 Kenny (owner)
>
> guys
> Property tax is due today
> I sent check that has to be turned in to Varun
> Varun I asked you to talk to Kenny
> You guys see each other and talk all the time
> I have to go to tax office this am and pay them those two checks

Other instances introduced at trial include:

- directing money drops in the Barton Creek area of Austin (GE# 82);
- directing wire transfers from Nick Fogelman for "purported" architect plans (GE# 83);
- directing V. Prasad where to obtain money orders for false rent payments (GE# 4a);
- creation of fake leases in the name of "Jack Rosey" to support bank loans (GE# 9a);
- directing V. Prasad to submit fake leases in the name of "Nick Jones" and "Jack Rosey" for properties at 9601 Wier Loop and 801 E. 32nd Street (GE# 94).

Notwithstanding examples of Defendant's active managerial role, U.S.S.G. § 3B1.1, cmt. n.2. advises that an *upward departure* may be warranted for a defendant who **did not** exercise control over another participant but "nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1, cmt. n.2. (emphasis added).

The Fifth Circuit has construed Note 2 to allow application of an *adjustment,* even where a defendant did not exercise control over another participant, if he exercised management responsibility over the property, assets, or activities of a criminal organization. *United States v. Delgado,* 672 F.3d 320, 345 (5th Cir. 2012) (en banc).

In *Delgado*, the Court held that because the defendant "control[led] a large quantity of drugs and the truck used to transport them," and "made arrangements for their transportation and delivery," the district court's finding was not clearly erroneous. *Id.* According to *Delgado,* a §3B1.1 adjustment may be based on *either* control over people or management of assets. *Id.*

A more apt comparison is the Fifth Circuit's application of the *Delgado* in *United States v. St. Junius,* 739 F.3d 193, 208–09 (5th Cir. 2013). There the Fifth Circuit upheld a district court's aggravating role adjustment where defendant signed important documents, including paychecks, and sent correspondence as the owner of an organization engaged in health care

3

fraud. In *St. Junius*, the Fifth Circuit further held that the district court's sentencing enhancement at issue is not limited to the "true leader" of the criminal enterprise. It also applies to individuals who "exercised management responsibility over the property, assets, or activities of a criminal organization." *Id.* "St. Junius knowingly and willingly led others to believe that she was the owner of TMS. She signed Medicare documents, signed and issued paychecks, and sent correspondence as the owner of TMS." *Id.*

Similar to *St. Junius*, Defendant established LLCs and corresponding bank accounts in the name of each of the three properties being used to launder proceeds; conducted all of the banking and real estate negotiations and transactions; filed documents for the Small Business Administration Economic Injury Disaster Loan (EIDL) for the 9601 Wier Loop property in 2021 using fake leases (GE# 211) and solely managed contractors and subcontractors for renovations using drug proceeds.

The commentary to § 3B1.1 further suggests a list of factors to consider when determining a defendant's role in the offense, including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, ***the claimed right to a larger share of the fruits of the crime***, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *See* U.S.S.G. § 3B1.1, comment. (n.4)(emphasis added).

Despite contributing a small percentage of capital for the purchase or renovations of the properties at 2610 S.3d. Street, Defendant entered contracts with V. Prasad and K. Nguyen claiming a 55% owner interest. Defendant also executed agreements using the same contract terms for the property at and 801 E.32nd Street. (GE#s 148 & 166). Furthermore, Defendant's "contracts" requiring a 55%-45% split in Defendant's favor with no seed money on his part

4

would have resulted in windfall profits if the scheme succeeded and the real estate sold.

Given Defendant's managerial and decision-making activities in laundering drug proceeds through the LLCs and predominantly directing the real estate concerns refute his claim at trial that he was shielded from criminal responsibility based on his structuring the LLCs is ridiculous on its face. Frankly stated, without the Defendant, the real estate scheme would not have existed.

The evidence is overwhelming as to Defendant's involvement in establishing and managing the money laundering arm of this criminal enterprise. Defendant procured real estate transactions with laundered funds, established limited liability corporations for these properties, managed the banking aspects, sought new investment opportunities for both laundering funds (801 32nd St. (GE#43)) and expanding drug production (Bastrop Farm (GE#57)), managed the construction renovations of the subject properties (GE#12, 13, 28 & 30); managed the false lease documents submitted in support of the money laundering scheme (GE# 9a), and created false 1099 forms and employment letters to conceal the money laundering activities (GE#s 44 & 55).

Defendant was a leader, manager and organizer and his objection fails under either guideline application.

### B.  Objection #2 – Defendant was in the Business of Laundering Funds

Application note 4(A) to Guideline § 2S1.1(b)(2)(C) commentary instructs a court to look to the totality of circumstances to determine whether a defendant was "in the business of laundering funds." Application note 4(B) lists six non-exhaustive factors to be considered in determining whether defendant was in the business of laundering funds: (1) regularly engaged in laundering funds; (2) laundered funds during an extended period of time; (3) laundered funds from multiple sources; (4) generated a substantial amount of revenue in return for laundering

funds; (5) had one or more prior convictions under specified statutes at the time he committed the offense; and (6) during the course of an undercover government investigation, the defendant made statements that he engaged in any of the conduct described in the other factors. U.S.S.G. § 2S1.1 app. n. 4(B).[1] *See also* Amend. 634, U.S.S.G. Supp. to App'x C, Reason for Amendment (explaining the reason for the four-level "in the business of laundering funds" enhancement and comparing defendants who "routinely engage in laundering funds on behalf of others" to a professional "fence," as both "warrant substantial additional punishment because they encourage the commission of additional criminal conduct").

While the Fifth Circuit has declined to adopt a firm definition of the term "in the business of laundering funds", they point to the Sentencing Commission's commentary to the 2003 revision to § 2S1.1. As to who is subject to the "business" enhancement, " '[t]he Commission determined that, similar to a professional "fence", defendants who routinely engage in laundering funds on behalf of others, and who gain financially from engaging in such transactions, warrant substantial additional punishment because they encourage the commission of additional criminal conduct.' " *See* U.S.S.G. § 2B1.1(b)(4)(B); *United States v. Aguasvivas–Castillo,* 668 F.3d 7, 14 (1st Cir. 2012) (quoting U.S.S.G. app. C, vol. II, at 228–29 (2003)); *United Staes v. Lucena-Rivera*, 750 F.3d 43, 52-53 (1st Cir. 2014)

1. <u>Regularly Engaged In Laundering Funds</u>

Considering the first factor in the Commentary to § 2S1.1(b)(2)(C), Defendant's conduct was not isolated, casual, or sporadic.  As it relates to the property at 2610 S.3rd Street, Defendant was the individual making monthly interest payments at Arch Funding more than 18 months. His efforts also entailed negotiating multiple extension terms of these hard money loans. (BE#s 131

---

[1] The Government concedes that the 5th factor is not present in this case.

& 186).

    2.   Laundered Funds During An Extended Period Of Time

Defendant's involvement laundering proceeds began with the purchase of Richard Quigly's interest in the 9601 Wier Loop property on June 3, 2019 (GE#s 138-141). That involvement continued even after his arrest and indictment when in February 2021, the Small Business Administration rejected Defendant's EIDL loan application. During this time Defendant managed all the real estate financing, renovations, leasing and maintained control of the associated bank accounts. for 9601 Wier Loop, 2610 S. 3rd Street and 801 E. 32nd Street.

    3.   Laundered Funds From Multiple Sources

During the two years of the money laundering scheme, Defendant received laundered funds from both Kenny Nguyen and Varun Prasad. These funds involved the sale of a variety of controlled substances to include, marijuana, LSD, Xanax, psilocybin mushrooms, etc.

The funds were laundered in multiple manners and from multiple people to disguise their true source and nature. These vehicles included cash payments, wire transfers, Venmo deposits, money orders, cashier's checks, loans funneled through the bank accounts of multiple sham limited liability companies. The management of these properties were practically every day since that was Defendant's only source of income.

    4.   Generated a Substantial Amount of Revenue in Return for Laundering Funds

Defendant kept approximately $167,000 for himself in cash from the multiple sham companies (GE# 99), a $25,000 infusion from K. Nguyen to buyout David Quigley from 9601 Wier Loop (GE#s 138-141), and a $200,000 loan from V. Prasad-all sourced from drug transactions (GE # 99, 138), a $15,000 realtor fee to Sally Daneshjou. As the front person, Defendant held real property assets valued at more than $1,000,000, a substantial amount,

especially when compared to the lack of any legal revenue generated by Defendant and the minimal seed funds and no renovations contributions paid.  In essence, the **only** revenue that Defendant had was laundered funds.

5. <u>During the Course of the Undercover Government Investigation, the Defendant Made Statements that He Engaged in any of the Conduct Described in the Other Factors</u>

As to the last factor, Defendant made multiple statements during the court authorized TIII directing coconspirators as to the flow of drug proceeds and the laundering of those proceeds via money orders and wires. (GE#s 1-24).  Similarly, Defendant had text generated conversations with other coconspirators regarding the same.  (GE#25-76).

Defendant states that his "business holdings were well established decades before" and he had "employed the use of LLC's for legitimate real estate deals for decades [and] . . . the purpose of their relationship was for the purchase of real estate." It is Defendant's position that Prasad targeted Daneshjou because he was already in the real estate business. Defendant's Obj @ 2-4.

This claim is contradicted by Defendant using his knowledge of real estate to purchase properties, specifically forming LLCs for these properties, engaging in partnership agreements with two twenty-something college students and soliciting a $200,000 unsecured cash loan from Prasad, knowledge and participation of the 9601 Weir Loop psilocybin growing operation. Most telling is Defendant's detailed explanation to Prasad on the TIII of the specific steps Prasad need to take in using money orders to launder drug proceeds. (GE#s 4 & 10).

Given these factors and based on the totality of the circumstances Defendant was "in the business of laundering funds," such that a four-level increase is warranted. *See United States v. Aguasvivas–Castillo,* No. 07–0111 CCC, 2010 WL 883719, *2 (D.P.R. Mar. 5, 2010) (holding enhancement properly applied when defendant received at least $334,493 in kickbacks

from laundering at least $4.4 million at three supermarkets)

### C. Objection #3 – Aggravated Role Adjustment Precluding Zero-Point Offender

Based on the above-stated reasons supporting application of an aggravating role adjustment pursuant to §3B1.1, Defendant is not eligible for application of § 4C1.1 – Zero Point Offender adjustment.

### III.  SENTENCING MEMORANDUM

Section 3553(a) directs the Court to "impose a sentence sufficient, *but not greater than necessary*, to comply with . . ." the statutory sentencing goals. 18 U.S.C. § 3553(a) (emphasis added); *see also Williams*, 517 F.3d at 809. The section 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, etc.;
>
> (3) the kinds of sentences available;
>
> (4) the Guidelines;
>
> (5) pertinent policy statements;
>
> (6) the need to avoid unwarranted sentencing disparities; and
>
> (7) the need to provide restitution to any victims.

18 U.S.C. § 3553(a).

### A. History and Characteristics of Defendant

-Utilizing the system to his advantage

    : Lawsuits

    : Credit report

    : Delays of this proceeding

9

: Asking lawyers to do uncomfortable things

: Malingering to avoid consequences

Role and knowledge

- "the investigation never revealed any involvement of Daneshjou distributing or possessing any controlled substance" p.7 and "had no direct involvement in the drug operation" *-Testimony of TFO Ron Enriquez that on September 24, 2019, V. Prasad and Defendant in Defendant's 2014 Maserati, went to multiple high-rise residences and stayed for a short period of time*

-psilocybin

Age and Poor health,

§5H.1 indicates that the "age-crime curve, . . . demonstrates that criminal behavior tends to decrease with age. Age-appropriate interventions and other protective factors may promote desistance from crime" 5H1.1 (Age (policy Statement)

That is not the case with the Defendant. What appears to be a consistent and persistent efforts to engage in civil fraud turned to criminal activities to satisfy his need for funds.

Disparity

The salient consideration in determining disparity necessitates an evaluation of parity regarding activities and behavior among   the co-defendants

Age,

Defendant cites to 5H1.1 claiming that age may be a consideration where a Defendant is elderly and infirm. Although elderly, Defendant has demonstrated through the prodigious number and length of filings and the conduct of his own criminal defense that he is anything but infirm.

-5H1.1 also references the "age crime-curve" where criminal behavior tends to decrease

10

with age and that youthful individuals generally are more impulsive, risk-seeking and susceptible to outside influence and that "[y]outhful individuals also are more amendable to rehabilitation.

Defendant's claim of "age" is a double-edged sword. Whereas youth can be a consideration for many of the other defendants in this case, such is not the case for Defendant who gravitated toward criminal activities to further the criminal enterprise, establish a money-laundering business and continue to search for and advise V. Prasad on additional properties in which to invest drug proceed at a late stage in life.  Age and Poor health,

-Did not stop him from devising and running a money laundering business

-Did not stop him from attempting to continue the conspiracy in applying for an EIDL loan *See* (GE# 211)

-Still did not stop him from attempting to shelter funds in multiple entities under the false belief that those funds did not belong to him

-Transcript from prior hearing shows both his treating physician and medical staff at Bastrop County opined

40% 70+ indicates that 60% were incarcerated Nothing in Defendant's medical records indicate that Defendant is incapable of self-care and is immobile

s.  The property at S.3dnd street

 experience, professional degree, cooperation and acceptance of responsibility, role, benefit, other activities (considerable that Defendant's other fraud-tinged activities went unaccounted for)

Contrary to Defendant's position, sentencing Defendant anywhere near the other codefendants would create the disparate result.
Age and Poor health,

-Did not stop him from devising and running a money laundering business

-Did not stop him from attempting to continue the conspiracy in applying for an EIDLloan See GE# 211

-Still did not stop him from attempting to shelter funds in multiple entities under the false

belief that those funds did not belong to him

## IV.

## **CONCLUSION**

*They (Lilliputians) look upon fraud as a greater Crime than Theft, and therefore seldom fail to punish it with Death; for they allege, that Care and Vigilance, with a very common Understanding, may preserve a Man's Goods from Thieves, but Honesty has no fence against superior Cunning; and since it is necessary that there should be a perpetual Intercourse of Buying and Selling, and dealing upon Credit, where Fraud is permitted and connived at, or has no Law to punish it, the honest Dealer is always undone, and the Knave gets the advantage."*

Swift, J. Gulliver's Travels, London, Penguin (1967) p. 94

Two words characterize Defendant - **greed** and **grift**. The social contract we agree to in exchange for an orderly and safe community is the most fundamental source that citizens depend upon to live well. The choice is either to live by the terms of the contract, or if not, live in chaos governed solely by self-interest.

Defendant wholly rejected this contract. His actions and his history reflect that self-interest and self-dealing are his only touchstones. His undeserved and certainly unearned sense of entitlement drove him towards one goal: lining his own pockets by any means including willingly joining a drug trafficking organization.

WHEREFORE PREMISES CONSIDERED, the United States respectfully prays this Court overrule Defendant's objections and based on the circumstances of this case, Defendant's conduct and his history, sentence him within the advisory guideline range.

    Respectfully submitted,
    JUSTIN R. SIMMONS
    UNITED STATES ATTORNEY

By:  /s/ *Douglas W. Gardner*
    DOUGLAS GARDNER
    Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

1) I hereby certify that a copy of the foregoing has been delivered via registered United States Mail on October 1, 2025, to:

>   Mr. BENNY DANESHJOU
>   *Pro Se Defendant*
>   USMS No. 20220-509
>   Limestone County Detention Center
>   910 Tyus Road
>   Groesbeck, TX 76642

2) I hereby certify that a copy of the foregoing has been delivered via email on October 1, 2025, to:
   BDaneshjoulegal@gmail.com

3) I hereby certify that a copy of the foregoing has been delivered via the ECF electronic notification on October 1, 2025

4) I hereby certify that a copy of the foregoing has been delivered via registered United States Mail on October 1, 2025, to:

>   Mr. BENNY DANESHJOU
>   2300 Portofino Ridge Drive,
>   Austin, TX 78735

                                                   Respectfully submitted,

                                                   JUSTIN R. SIMMONS
                                                   UNITED STATES ATTORNEY

                                   By:  /s/ *Douglas W. Gardner*
                                                   DOUGLAS GARDNER
                                                 Assistant United States Attorney